# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON GRIMM and MATTHEW BERNARD, individually and on behalf of others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>AERO COMMUNICATIONS, INC.<br><br>　　　　　　　Defendant. | Civil Action No.: _____<br><br>Collective and Class Action<br><br>JURY TRIAL DEMANDED<br><br>Electronically Filed |

## **COLLECTIVE AND CLASS ACTION COMPLAINT**

## INTRODUCTION

Plaintiffs Jason Grimm and Matthew Bernard, individually and on behalf of all other similarly situated individuals, bring claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 331.101 *et seq.,* the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1, *et seq.,* and the common law doctrine of unjust enrichment against Defendant Aero Communications, Inc. Plaintiffs worked for Defendant Aero Communications, Inc. as "fulfillment technicians," providing cable and internet installation services for Comcast customers, and were paid by Defendant on a "piece rate" basis, whereby they would receive a percentage of the price that Comcast paid to Aero for each particular service they completed. Plaintiffs bring this collective and class action complaint to challenge Defendant Aero Communications, Inc.'s unlawful practices of failing to pay them for the actual services they performed and failing to pay them overtime while manipulating their hourly pay rates listed on their paystubs to mislead them into believing that time and a half was properly being paid. In support, Plaintiffs state as follows:

**PARTIES**

1.      Plaintiff Jason Grimm is an adult individual who resides in Allegheny County, Pennsylvania. Plaintiff Grimm was employed as a "fulfillment technician" for Aero Communications, Inc. from April, 2013 until on or around April of 2018. He has consented in writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b). His consent is attached hereto as Exhibit A.

2.      Plaintiff Matthew Bernard is an adult individual who resides in Westmoreland County, Pennsylvania. Plaintiff Bernard was employed as a "fulfillment technician" for Aero Communications, Inc. from on or around April, 2013 until on or around April of 2018. He has consented in writing to be a plaintiff in this FLSA action pursuant to 29 U.S.C. § 216(b). His consent is attached hereto as Exhibit B.

3.      At all times relevant to this matter, Plaintiffs Grimm and Bernard were "employees" of Defendant Aero Communications, Inc., within the meaning of the FLSA, 29 U.S.C. § 203(e), the PMWA, 43 P.S. § 333.103(h), and the PWPCL, 43 P.S. § 260.2a.

4.      Defendant Aero Communications, Inc. ("Aero" or "Defendant") is a business entity that employs fulfillment technicians such as Plaintiffs to provide cable and internet installation services to cable and internet providers, including, in this District, Comcast. Aero is headquartered in Canton, Michigan and regularly conducts business in Pennsylvania, among other states. Aero was formerly known as Advanced Communications, Inc.

5.       At all times relevant to this matter, Aero was an "employer" of Plaintiffs and all similarly situated fulfillment technicians as described further below, within the meaning of the FLSA, 29 U.S.C. § 203(d), the PMWA, 3 P.S. § 333.103(g), and the PWPCL, 43 P.S. § 260.2a.

**JURISDICTION AND VENUE**

6. The FLSA authorizes lawsuits by private parties to recover damages for violations of its wage and hour provisions. This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7. This Court also has supplemental jurisdiction over Plaintiffs' related PMWA and PWPCL claims and unjust enrichment claims pursuant to 28 U.S.C. § 1367(a).

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391 as Defendant maintained an office and operations in this judicial district, Plaintiffs were employed in and reside in this district, and a substantial part of the events giving rise to the Plaintiffs' claims occurred in this district.

**STATEMENT OF MATERIAL FACTS**

**Plaintiffs Contracted With Aero to Receive "Piece Rate" Payment
For Cable and Internet Installation Services Performed**

9. Aero provides cable and internet installation services to cable and internet providers in multiple states.

10. Aero maintained an office in Carnegie, Pennsylvania, and employed fulfillment technicians (or "technicians") like Plaintiffs to provide services to Comcast customers in the surrounding area.

11. Upon information and belief, Aero also maintains other offices throughout Pennsylvania, including in or around Philadelphia and Reading, employing technicians in those areas.

12. Plaintiffs worked for Aero as technicians in the western Pennsylvania area, providing services to Comcast customers.

13. Plaintiffs were employees of Aero.

14. Aero contracts with Comcast to provide specific installation services at a specific price. These installation services are performed by Aero technicians.

15. Each installation service is designated by a code, which reflects the price that Comcast is to pay Aero for that particular service ("service code").

16. In turn, Aero agreed to pay its technicians on a "piece rate" basis, whereby as payment for completing a particular service, they are to receive a percentage of the price that Comcast pays Aero for that service.

17. Aero management employees informed technicians both orally and in writing of the agreement that they would be paid a certain percentage of the price that Comcast pays to Aero for the service the technician actually performs.

18. Technicians received job assignments each morning from Aero, via a mobile cell phone application.

19. At the end of each work day, technicians were responsible for completing and submitting a dated form that lists the jobs they completed each day, the address of the Comcast customer, and the service codes designating which services the technician actually provided (the "daily form").

20. Technicians provided the daily forms to Aero at the end of each day by email.

21. The daily forms allowed technicians to keep track of which services they had completed, and thus, the amount of money they would receive as piece rate pay for each service.

22. Technicians were able to use Aero's "FIP Mobile" application to track the information that they had provided to Aero.

23. Over time, technicians were rewarded with a higher percentage of the price Comcast paid to Aero for each service performed.

24. As such, when Plaintiffs Grimm and Bernard started their employment with Aero, they were paid in the range of 26-27% of the price that Comcast paid to Aero for each service. By the end of their employment with Aero, Plaintiffs Grimm and Bernard were paid 34.5% of the price of each service performed.

25. The agreement that Aero will pay its technicians a certain percentage of the price that Comcast pays Aero for the service the technician actually performs, as reflected by the service code listed on the daily form technicians submit to Aero, is a contract between Aero and its technicians.

### Aero Willfully Changed the Service Codes After the Daily Forms Were Submitted and Therefore Failed to Pay Its Technicians for the Services They Completed

26. Aero management maintained a consistent practice of changing the service codes on the daily forms after technicians submitted them to a new service code that designated a less expensive service.

27. Aero then paid its technicians on a piece rate basis for the new, less expensive service codes, and not the service codes that reflected the actual service the technicians performed.

28. As a result of this practice, technicians received a percentage of a lower price than the price upon which their percentage should have been based, and were deprived of straight time and overtime wages to which they were entitled pursuant to the contract between Aero and its technicians.

29. Upon information and belief, Aero deliberately maintained this practice so as to reduce the amount of money it was required to pay to its technicians under their contract, in willful disregard of its contractual and statutory obligations to its technicians.

**Aero Willfully Failed to Pay Overtime Wages While at the Same Time Issuing Paystubs to Mislead Technicians Into Believing That Overtime Was Properly Being Paid**

30.     Plaintiffs Grimm and Bernard, like other technicians, regularly worked 40 hours per week completing services for Comcast customers. In such weeks, Plaintiffs Grimm and Bernard, like other technicians, regularly worked additional hours beyond 40 hours.

31.     The overtime requirements of the FLSA, 29 U.S.C. § 207(a), and the regulations promulgated at 29 C.F.R. § 778.11, require employers to calculate overtime for piece rate employees by dividing the total weekly income by the total number of hours worked to determine the employees "regular rate," and then paying an additional 50% of that rate for each hour worked beyond 40 hours.

32.     The PMWA, 43 P.S. § 333.104(c), and the regulations promulgated by the state Department of Labor, 34 Pa. Code § 231.43(b), mandate the same method of calculating overtime pay.

33.     The above-referenced method of paying piece rate employees a "regular rate" for all hours worked in a week and then an additional 50% of that rate for each hour worked beyond 40 hours ensures that piece rate employees are effectively being paid time and a half for every hour worked over 40 hours in a week.

34.     However, Aero pays its technicians on the same piece rate basis without regard to the number of hours the technician actually works. By way of example, a hypothetical technician who completes enough services to earn $1,000 was paid that amount whether it took 40 or 50 hours in a week.

35.     At the same time, Aero issues paystubs to its technicians that are designed to appear to show that they are being paid time and a half for every hour they worked in a week beyond the first 40 hours.

6

36. For example, for the pay period of June 12, 2016 to June 18, 2016, Plaintiff Grimm was paid $896.25 for working 55.83 hours that week. His paystub from Aero for that week reflected a "regular" "rate" of $14.06 for his first 40 hours of work, and an "overtime" "rate" of $21.09 for the 15.83 hours of overtime.

37. Upon information and belief, while Aero pays technicians on the same piece rate basis without regard to the number of hours the technician actually works, it uses the following formula to reverse-engineer a so-called "regular" "rate" for the first 40 hours of work that it then records on the paystubs.

38. Aero first divides the technician's piece rate pay for all services by a sum equal to 40 hours and the overtime hours worked multiplied by a factor of 1.5. In other words, in the above example, Aero divided Plaintiff Grimm's total pay by 63.745 hours, or 40 hours plus 23.745 hours (15.83 overtime hours times 1.5), to yield a "regular" "rate" of $14.06.

39. Aero then multiplies that "regular" "rate" by 1.5 to get an "overtime" "rate." In the above example, $14.06 times 1.5 equals $21.09.

40. By using this formula, Aero reduces the "regular" rate which its technicians are actually entitled to receive, and in turn, the "overtime" rate.

41. Using the above example, under the FLSA and the PMWA, Plaintiff Grimm's "regular rate" for all hours worked should have been $16.05, or $896.25 divided by 55.83 (the actual number of hours worked). As such, he should have been paid $896.25 ($16.05 x 55.83 hours) plus an additional $127.11 ($8.03 for the 15.83 hours of overtime), or a total of $1023.36, instead of the $896.25 Aero actually paid him. In this way, he would have effectively been paid time and a half for every hour worked over 40 hours in a week, per the FLSA and PMWA.

42. As a result of this practice, Aero deprived technicians of overtime pay to which they are entitled under the FLSA and the PMWA.

43. Aero knew that technicians were in fact due overtime pay as defined in the appropriate state and federal regulations.

44. By issuing paystubs to its technicians that were designed to make it look like the technicians were receiving time and a half for every hour worked beyond the first 40 hours worked in a week, Aero plainly was aware that it was not excused from paying overtime to its technicians when they worked over 40 hours in a week.

45. Aero purposefully issued paystubs in this manner to mislead its employees into thinking that Aero was properly paying overtime.

46. Aero has been or is a defendant in other FLSA suits brought by cable installers in other states, including Luckett, et al. v. Advanced Communications, Inc., et al., Case No. 11-CV-6461 (N.D. Ill.), Shields v. ACI Direct, Inc. (d/b/a) Aero Communications, Inc., et al., 1:14-cv-1722-JG (N.D. Oh.), and Ali, et al. v. Piron, LLC, et al., 17-cv-11012 (E.D. Mich.).

47. The U.S. Department of Labor has also issued a press release on July 30, 2015, detailing its investigation of a cable installation company for failing to pay its piece rate field technicians overtime in violation of the FLSA.

48. Upon information and belief, Aero itself was also subject to an investigation by the Pennsylvania Department of Labor within the past three years regarding its practices of compensating technicians.

49. Shortly after that investigation was concluded, Aero stopped allowing technicians access to the daily forms they had submitted.

50. As a result of its experience in similar litigation, the guidance issued by the DOL, and its own experience with a state investigation, Aero was aware of the requirements of Pennsylvania law and the FLSA, and intentionally disregarded it.

51. Aero's conduct, as set forth in this Complaint, was in willful disregard of its obligations under the FLSA and Pennsylvania law.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

### The Case Should be Certified as an "Opt-In" Collective Action Under the FLSA

52. Plaintiffs bring this action under the FLSA, 29 U.S.C. § 216(b), as an "opt-in" collective action on behalf of all similarly situated individuals who worked as piece rate technicians for Aero in Pennsylvania at any time within three years prior to this action's filing date through the final disposition of this case.

53. At all relevant times, Plaintiffs and said class members are and have been similarly situated, have had substantially similar job requirements, are subject to the same pay structure, and have been subject to Aero's common practices of willfully failing to properly pay straight time and overtime wages, as described in the preceding paragraphs.

54. Upon information and belief, Aero employed some 60 similarly situated piece rate technicians that worked, along with Plaintiffs Grimm and Bernard, for Aero in the Western Pennsylvania area, and employed many others at different locations through the state.

55. The number and identity of these persons yet to opt-in and consent to be party plaintiffs may be determined from records under the control of Aero, and these persons would benefit from the issuance of a Court-supervised notice of the instant lawsuit and the opportunity to join in the lawsuit.

## **The Case Should be Certified as a Class Action Under Fed. R. Civ. P. 23**

56. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs also bring this action under the PMWA, the PWPCL, and the doctrine of unjust enrichment as a class action on behalf of all similarly situated individuals who worked as piece rate technicians for Aero in Pennsylvania at any time within three years prior to this action's filing date through the final disposition of this case.

57. Upon information and belief, Aero employed some 60 similarly situated piece rate technicians that worked, along with Plaintiffs Grimm and Bernard, for Aero in the Western Pennsylvania area, and employed many others at different locations through the state. The number of class members is therefore large enough that joinder of individual members in this action is impracticable.

58. There are common questions of law and fact, including whether Aero's practices of changing the service codes on technicians' daily forms to a new code designating a less expensive service violates class members' right to payment for actual services completed pursuant to the contract with Aero, whether Aero's failure to properly calculate technicians' "regular rate" for the purposes of paying overtime violates their rights under the PMWA, and whether Aero was unjustly enriched by these practices.

59. For the same reasons, the claims of class members are typical of the claims of the Plaintiffs, and there is no conflict between Plaintiffs and any other class member.

60. Plaintiffs Grimm and Bernard will fairly and adequately protect the interests of the class. Attorneys for Plaintiffs are experienced and capable class action litigators and will fairly and adequately represent the interests of the class.

61. This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(1)(A).  The prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Aero.

62. This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(2), in that Aero has acted on grounds generally applicable to the class by changing the service codes on technicians' daily forms to a new service code designating a less expensive service and failing to properly calculate technicians' "regular rate" for the purposes of paying overtime.

63. Alternatively, this action is maintainable as a class action under Federal Rule of Civil Procedure Rule 23(b)(3), as the common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT ONE

### Fair Labor Standards Act, 29 U.S.C. § 207(a) – Overtime Violations
### (Plaintiffs, on behalf of the Collective Class, against Defendant)

64. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

65. Under the FLSA, an employer must pay an employee at least one and one half (1½) times his or her regular rate of pay for each hour worked in excess of forty (40) hours per workweek.  29 U.S.C. § 207(a)(1).

66. The regulations promulgated at 29 C.F.R. § 778.11 require employers to calculate overtime for piece rate employees by dividing the total weekly income by the total number of

hours worked to determine the employees "regular rate," and then paying an additional 50% of that rate for each hour worked beyond 40 hours.

67. Aero failed to pay the additional 50% of the "regular rate" for each hour its technicians worked beyond 40 hours.

68. The overtime wage provisions set forth in the FLSA apply to Aero and the positions held by Plaintiffs and members of the collective class are not exempt from the FLSA's overtime compensation requirements.

69. As a result of Aero's willful acts, as recited above, Plaintiffs and members of the collective class have been deprived of overtime compensation.

## COUNT TWO

### Pennsylvania Minimum Wage Act 43 P.S. § 333.104(c) – Overtime Violations
### (Plaintiffs, on behalf of the Rule 23 Class, against Defendant)

70. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

71. Like the FLSA, the PMWA mandates "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary[.]" 43 P.S. § 333.104(c).

72. The Pennsylvania Department of Labor has adopted regulations interpreting the PMWA's overtime provision. These regulations provide that "[e]xcept as otherwise provided in section 5(a)–(c) of the [PMWA] (43 P. S. § 333.105(a)–(c)), each employee shall be paid for overtime not less than 1 ½ times the employee's regular rate of pay for all hours in excess of 40 hours in a workweek." 34 Pa. Code § 231.41.

73. These regulations further provide that "The term workweek shall mean a period of 7 consecutive days starting on any day selected by the employer. Overtime shall be compensated

12

on a workweek basis regardless of whether the employee is compensated on an hourly wage, monthly salary, piece rate or other basis." 34 Pa. Code § 231.42.

74. As with the federal regulations, the Pennsylvania regulations also provide that "[i]f the employee is paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked in the day or at the job and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at the day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for hours worked in excess of 40 in the workweek." 34 Pa. Code § 231.43(b).

75. Aero failed to pay the additional 50% of the "regular rate" for each hour its technicians worked beyond 40 hours.

76. The overtime provisions in the PMWA and the regulations thereto apply to Aero and the positions held by Plaintiffs and members of the class are not exempt from these overtime compensation requirements.

77. As a result of Aero's willful acts, as recited above, Plaintiffs and members of the Rule 23 class have been deprived of overtime compensation.

**COUNT THREE**

**Pennsylvania Wage Payment Collection Law – Failure to Pay Straight-Time and Overtime**
**(Plaintiffs, on behalf of the Rule 23 Class, against Defendant)**

78. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

79. The PWPCL provides a statutory remedy when an employer breaches a contractual obligation to pay earned wages.

80. The PWPCL defines "wages" as "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation." 43 P.S. § 260.2a.

81. Per the terms of the employment contract between Aero and its technicians, as discussed above, Aero agreed to pay technicians a piece rate for each actual service performed.

82. The services that technicians performed were recorded by those technicians on the daily forms and designated with a particular service code.

83. By regularly changing those service codes after the fact to suggest that a less expensive service had been performed, and paying piece rates based on the downgraded service codes, Aero willfully deprived Plaintiffs and class members of wages to which they are entitled.

84. In turn, by reducing technicians' pay, Aero willfully deprived Plaintiffs and the class of the proper amount of straight time and overtime to which they should have received, as set forth above.

## COUNT IV

### Unjust Enrichment
### (Plaintiffs, on behalf of the Rule 23 Class, against Defendant)

85. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

86. Aero benefitted from the unpaid work of Plaintiffs and the class members and it would be unjust for Aero to keep the wages related to this work.

87. Plaintiffs and the class members are entitled to restitution of unpaid wages and overtime which are due.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A. That the Court declare that this action is a proper FLSA collective action and certify the proposed collective class pursuant to 29 U.S.C. § 216 after notice to the collective class;

B. That the Court certify this action as a Rule 23 class action;

C. That the Court declare that Aero willfully violated its statutory obligations in depriving Plaintiffs and other members of the collective class and Rule 23 class of overtime and straight time wages to which they are entitled;

D. That the Court award to members of the collective class and Rule 23 class unpaid overtime and straight time compensation, restitution for same, liquidated damages, and pre and post judgment interest thereon;

E. That the Court award attorneys' fees and costs of the action, to be paid by Defendant; and,

F. That the Court enter such other relief as it shall deem just and proper.

Respectfully submitted,

Dated:  July 2, 2018

 s/ Edward J. Feinstein
Edward J. Feinstein (PA No. 29718)
efeinstein@fdpklaw.com

Elizabeth Rabenold (PA No. 58039)
erabenold@fdpklaw.com

Ruairi McDonnell (PA No. 316998)
rmcdonnell@fdpklaw.com

**FEINSTEIN DOYLE PAYNE
  & KRAVEC, LLC**
Law & Finance Building, Suite 1300
429 Fourth Ave.
Pittsburgh, PA  15219
T:  (412) 281-8400
F:  (412) 281-1007

*Attorneys for Plaintiffs*

15

Case 2:18-cv-00868-MJH Document 1 Filed 07/02/18 Page 16 of 16